UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| TULFRA REALTY II LLC; TFJ 120 PASSAIC LLC; TFJ 120 PASSAIC APARTMENTS URBAN RENEWAL LLC; TFJ 120 PASSAIC RETAIL URBAN RENEWAL LLC; 29 FAIRFIELD DRIVE LLC; and 70 WEST PASSAIC LLC,<br><br>*Plaintiffs,*<br><br>v.<br><br>TOWNSHIP OF ROCHELLE PARK; JAMES DIMARIA, in his individual and official capacity; TERESA JUDGE-CRAVELLO; THOMAS MILLLER; MATTHEW TRAWINSKI; GAIL ARTOLA, JENNIFER APPICE, LINDA BONIFACE, SEAN SMYTH, in their individual and official capacities; WILLIAM COLEMAN, VINCENT BESSETTI, SUSAN IACOBUCCI, DONALD WARNET, JOHN DOES 1-10; and ABC CORPORATIONS 1-10,<br><br>*Defendants.* | 26-cv-01415 (MEF)(LDW)<br><br>**OPINION and ORDER** |

**Table of Contents**

I. Background
  A. Allegations
  B. Procedural History
II. Jurisdiction
III. Abstention
  A. Parallel?

1. Facts
2. Law
3. Parties
B. The Factors
C. The Equities
IV. Entire Controversy
V. Conclusion

* * *

A real estate developer partnered with a township to put together a mixed-use project. Contracts were signed, work was done.

But local opposition developed, and the developer came to believe that some of the township's officials were undermining the deal.

So the developer sued --- even though other cases had been pressed in New Jersey state courts.

The defendants have now moved to dismiss.

As to the parts taken up here, the motion is denied.

* * *

## I. Background

### A. Allegations

At this stage of the case, the Court must treat the complaint's allegations as true. See McTernan v. City of York, 577 F.3d 521, 526 (3d Cir. 2009). Whether they are in fact true --- that would be an issue for later.

* * *

Over a span of around five years, a developer[1] inked a set of contracts with a township[2] to redevelop some "blighted" land. See First Amended Complaint with Jury Demand ("Complaint") (ECF 2) ¶¶ 2, 29-45.

The developer agreed to pay fees to the township, see id. ¶ 43, and to do some work in connection with a self-storage facility, a multi-family apartment building, and some commercial spaces. See id. ¶¶ 32, 37, 39, 41, 45.

For its part, the township's main job was to facilitate the project. By adopting a redevelopment plan. See id. ¶ 32. Condemning an existing easement. See id. ¶ 33. And providing some tax breaks. See id. ¶ 42.

* * *

But a few years in, things started to go south.

As part of the project, for example, the developer worked on a garage. See id. ¶ 2. It leased some of the parking spots to another company so that company could store some vehicles there. See id. ¶ 48. But the township did not approve this. See id. ¶¶ 51-54. And it then issued $828,000 in fines --- $2,000 for each day that the vehicles were left in the garage. See id. ¶¶ 56-60.

Another example.

The agreements envisioned that a commercial space would be developed. See id. ¶ 32. That seems to have happened,[3] and the developer applied to put in a daycare. See id. ¶ 61. But that request was denied, too --- via the township's planning and zoning boards. See id. ¶¶ 61-66.

---

[1] Throughout this Opinion and Order, "developer" is used as shorthand for a set of limited liability companies that seemed to work together. Tulfra Realty II. TFJ 120 Passaic. TFJ 120 Passaic Apartments Urban Renewal. TFJ 120 Passaic Retail Urban Renewal. 29 Fairfield Drive. And 70 West Passaic.

[2] Rochelle Park.

[3] The complaint does not spell out what the developer actually did. Did it build the commercial space from scratch? Start with an existing space and do a fit-out? Not clear either way. But for now, nothing turns on which it was.

And similar issues on the residential side of things. As to two of the developers' properties, the township allegedly limited the number of housing units that could be built. See id. ¶¶ 67-69.

In short, from the developer's perspective, the township was consistently getting to no. "No" on approvals the developer wanted for parking and daycare. And "no" on housing-density questions.

And more. Per the developer, the township was taking a laundry list of other steps to impede the agreed-upon project.

No certificate of occupancy could issue on the parking without an extra $490,000 payment to the township. See id. ¶ 54. Extra money from the developer had to be put into an escrow account, after the township had wrongly drained it. See id. ¶¶ 82-85. The way the condemnation process was handled stuck the developer with high costs. See id. ¶¶ 72-76. The developer's properties were unfairly over-taxed. See id. ¶¶ 86-90.

And beyond all that, one of the members[4] of a local land-use board pushed for some money of his own. See id. ¶¶ 77-80. He offered to make "all the noise" about the project go away --- so long as the developer steered him some construction contracts. See id. The developer refused, and the board member then threatened to "make [the developer's] life difficult." See id. ¶ 80.

* * *

The nub of it: the real estate developer alleges[5] that the project was undermined by the township --- across the board, beyond the everyday push-and-pull associated with any development.

Why would the township do this?

After the agreements were signed, the developer alleges, local opposition to the project picked up steam. See id. ¶¶ 91-94. To some residents, the deal that the township had struck no longer seemed like a good one. See id. And per the developer,

---

[4] William Coleman.

[5] And recall: everything that has been said until now may or may not be true --- it is simply a summary of the developer's allegations, and for now these must be accepted as true.

that was reflected in the township's approach to the implementation of the parties' agreements.

### B. Procedural History

In light of the above, three different cases ended up being filed in New Jersey state court.

In one of those cases, this one, the developer sued the township,[6] and brought federal law claims --- claiming that the township had violated its federal constitutional rights. See Complaint ¶¶ 97-123, 135-140.[7] (This case started in state court but was removed here by the township.[8])

From here, call the developer[9] "the Plaintiff" and the township "the Defendant."[10]

* * *

The Defendant has now moved to dismiss. See Motion to Dismiss in Lieu of Filing an Answer Pursuant to F.R.C.P. 12(b)(6) ("Defendant's Brief") (ECF 9-1).

This Opinion and Order zeroes in on only a subset of the Defendant's arguments --- three across-the-board defenses, ones that would stop the whole case in its tracks before getting to the merits.

Work through these three defenses in the next Parts.

---

6 And various township officials. See Complaint ¶¶ 15-28.

7 Some other claims were in the mix, too. Claims under a federal statute, see Complaint ¶¶ 124-29, and under state common law. See id. ¶¶ 130-34.

8 And by the other parties named on the township's side of the ledger. See footnote 6.

9 See footnote 1.

10 Set aside for now the other defendants named in this lawsuit. They are relevant only here and there for this Opinion and Order, and are discussed only as they come up.

## **II. Jurisdiction**

The Defendant's first argument: the Court has no jurisdiction here, because of the Rooker-Feldman doctrine. See Defendant's Brief at 18-22.

The Court's conclusion: this is not persuasive.

* * *

In the system created by the jurisdictional statutes Congress has enacted, federal court review of a state court judgment is generally the Supreme Court's job --- not the job of a federal district court.[11] See Riotto v. Fay Servicing, LLC, 740 F. Supp. 3d 400, 404 (D.N.J. 2024).

The Rooker-Feldman doctrine[12] helps to keep federal district courts in their lane.[13]

Under the doctrine, a federal district court has no jurisdiction over a case in which each of four boxes is checked. See Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005); Great Western Mining & Min. Co. v. Fox Rothschild LLP, 615 F.3d 159, 166 (3d Cir. 2010).

First, where the federal plaintiff "lost in state court." Great Western Mining & Min. Co., 615 F. 3d at 166.

Second, where "the [federal] plaintiff complains of injuries caused by the state-court judgment[]." Id. (cleaned up).

Third, where the relevant state court "judgment[] [was] rendered before the federal suit was filed." Id.

---

[11] "Generally" because there are exceptions. In the habeas corpus context, for example, the district courts have been given the front-line responsibility to review state court judgments. Not the Supreme Court.

[12] Named for Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), and D.C. Ct. of Appeals v. Feldman, 460 U.S. 462 (1983).

[13] And in doing so, the doctrine keeps the field clear for the Supreme Court --- so it can handle the work that Congress reserved for it, of being the sole federal court to review most state court judgments.

And fourth, where the federal plaintiff, by his federal court lawsuit, "is inviting the district court to review and reject the state judgment[]." Id.

* * *

Here, the Defendant contends that these Rooker-Feldman requirements are met because of the interaction between (i) this case and (ii) another case --- call it the "Daycare Case."

The Daycare Case in a nutshell: township land-use officials[14] denied the developer's daycare application, and the developer sued[15] the zoning board in New Jersey state court[16] to reverse the decision, but the state court affirmed.[17]

Per the Defendant, that affirmance pulls jurisdiction away from the Court under Rooker-Feldman. Because, it is said, the Plaintiff here is essentially asking the Court to undo that state court affirmance. See Defendant's Brief at 18-21.

But this does not get it right. Each of the four links in the chain must be there for Rooker-Feldman to apply. Here, though, at least one is not.

* * *

Take the second Rooker-Feldman requirement --- that the federal Plaintiff is complaining of an injury "caused by [the relevant] state-court judgment[]." Exxon Mobil Corp., 544 U.S. at 284.

But that is not what is happening here.

---

14 Acting through the planning board, and then the zoning board. See Complaint ¶¶ 62-65.

15 As noted, see footnote 1, the developer here is actually a set of companies. In the Daycare Case, only one of them sued. See Action in Lieu of Prerogative Writs & Complaint Seeking Declaratory Judgment and Other Relief ("Daycare Case Complaint"), TFJ 120 Passaic Retail Urb. Renewal, LLC v. Twp. of Rochelle Park Zoning Bd. of Adjustment, No. BER-L-6565-24 (N.J. Super. Ct. Law Div. Nov. 13, 2024).

16 The case was filed in Superior Court, in Bergen County.

17 See Order ("Daycare Case Order") at 24, TFJ 120 Passaic Retail Urb. Renewal, LLC v. Twp. of Rochelle Park Zoning Bd. of Adjustment, No. BER-L-6565-24 (N.J. Super. Ct. Law Div. Jan. 13, 2026).

For the developer-Plaintiff, the "source of [its] injury," Great Western Mining & Min. Co., 615 F.3d at 166, was "the [township-D]efendant's action[]" in rejecting the developer's application to slot the daycare into the commercial space --- "not the state court judgment[]" that later affirmed that rejection. Id.

That is why it made sense to file this case (as the Plaintiff did) even before the Daycare Case was wrapped up.[18] From the Plaintiff's perspective, there was no reason to wait. Its injury was already there --- the daycare had already not been allowed in the commercial space.

In this case, the Plaintiff's alleged injury[19] is not being able to put a daycare into a particular location. That injury could have been caused by what came before --- denial of the daycare application by the Defendant. But it could not have been caused by something that only came after --- the state court judgment affirming that denial. And Rooker-Feldman only applies as to "injuries caused by [a] state-court judgment[]." Exxon Mobil Corp., 544 U.S. at 284.

In cases like this one, where a state court upholds a local land-use decision --- federal courts routinely reject Rooker-Feldman arguments. The cause of the injury was the local officials' underlying land-use determination. Not the state court affirming it. See Holton v. Henon, 832 F. App'x 781, 784-85 (3d Cir. 2020); Rose v. City of Allentown, 211 F. App'x 133, 137 (3d Cir. 2007); Centres, Inc. v. Town of Brookfield, Wis., 148 F.3d 699, 701, 703 (7th Cir. 1998).[20]

---

[18] The Plaintiff filed this case on January 12, 2026. See Complaint with Jury Demand ("State Complaint"), Tulfra Realty II LLC v. Twp. of Rochelle Park, No. BER-L-593-26 (N.J. Super. Ct. Law Div. Jan. 12, 2026). The Daycare Case affirmance came one day later, on January 13, 2026.

[19] Among others.

[20] Rooker-Feldman law has changed over the years --- it kicks in more rarely now than it used to. See In re Adams, 151 F.4th 144, 151-52 (3d Cir. 2025); Great Western Mining & Min. Co., 615 F.3d at 165-66. But even during the period when the doctrine cast a broader net --- it was not taken to apply in cases like this one, where the federal plaintiff is concerned with a state court decision turning aside a challenge to a local land-use decision. See Parkview Assocs. P'ship v. City of Lebanon, 225 F.3d 321, 325-26 (3d Cir. 2000). Note here that things might be

In short, for Rooker-Feldman to apply, all four of its requirements need to be satisfied --- but here, the second one is not.[21]

---

different when what is challenged is not a state court approval of a land-use decision --- but affirmative relief ordered by the state court in connection with its approval of the land-use decision. Cf. Giuliani v. Springfield Twp., 238 F. Supp. 3d 670, 687, 693-95 (E.D. Pa. 2017) (applying Rooker-Feldman to bar federal review of a state court judgment affirming a land-use decision where the state court issued a cease-and-desist order). In that circumstance, "[t]he source" of the injury may be "the state court's enforcement of the land-use restrictions," not the underlying restrictions themselves. Id. at 695. But none of that is in play here.

[21] There may be other missing links, too. First, Rooker-Feldman is triggered only where the plaintiff is asking the federal court "to review and reject the state judgment[]." Great Western Mining & Min. Co., 615 F.3d at 166. But is that the situation here? To resolve the Daycare Case, the state court held that local officials' denial of the daycare application was not arbitrary, capricious, or unreasonable (as a matter of New Jersey administrative law) and did not break the parties' agreements (as a matter of New Jersey contract law). See Daycare Case Order at 17-22. But now in federal court, there are no administrative law or breach-of-contract claims tied to the daycare denial. Rather, the main question is whether the daycare application denial is part of a broader violation of federal constitutional law. Assessing whether there was such a broader violation may not turn on whether the state court got things right. After all, something might be fine as a matter of state administrative or breach-of-contract law --- but still be illegal as a matter of, say, federal excessive-fines law under the constitution (the basis for one of the claims pressed here by the Plaintiff). See Plaintiffs' Brief in Opposition to Defendants' Motion to Dismiss the First Amended Complaint and Request for Fees and Sanctions ("Plaintiff's Brief") (ECF 16) at 10-11 (explaining); see also Taliaferro, 458 F.3d at 192-93; Parkview Assocs. P'ship, 225 F.3d at 325-26; Giuliani, 238 F. Supp. 3d at 695. And a possible second issue, too. For Rooker-Feldman to come online, the state court judgment must be "rendered before the federal suit was filed." Great W. Mining & Min. Co., 615 F.3d at 166. But in a case like this one, that is removed from state court to federal court, when exactly is the

Therefore, Rooker-Feldman does not take jurisdiction away from this Court.

## III. Abstention

The Defendant's next argument: that even if the Court has jurisdiction, it should hold back from exercising it, under the Colorado River abstention doctrine.[22] See Defendant's Brief at 22-24.

But this argument also comes up short. To see why, start with some background.

* * *

Under Colorado River, federal courts should sometimes abstain for an ongoing state court case when the federal case and the state case concern enough of the same things. See IFC Interconsult, AG v. Safeguard Int'l Partners, LLC, 438 F.3d 298, 305-07 (3d Cir. 2006).

The Defendant says that should happen here. See Defendant's Brief at 22-24.

This time because of the interplay between (i) this case and (ii) another state-court case --- call that one the "Contract Case."

That case, the Contract Case, is still underway --- and there, the township (here, the Defendant) is suing the developer (here, the Plaintiff), claiming that the developer has not held up its end of the bargain under the parties' various agreements.[23] And

---

"federal suit . . . filed?" If the moment that matters is when the state case was filed, then that was before there was a judgment in the Daycare Case --- and Rooker-Feldman is therefore off the table. But if the moment that matters is when the state case was removed to federal court, then that was after there was a judgment in the Daycare Case --- and Rooker-Feldman might have a role to play. But the parties do not address these issues, and the Court has located no on-point decisions.

[22] Named for Colo. River Water Conservation Dist. v. United States, 424 U.S. 800 (1976).

[23] See Complaint & Jury Demand ("Contract Case Complaint"), Twp. of Rochelle Park v. TFJ 120 Passaic Urb., No. BER-L-6157-25 (N.J. Super. Ct. Law Div. Sept. 11, 2025).

as part of the same case, the developer has turned around and pressed counterclaims of its own --- against the township, also related to these agreements.[24]

Per the Defendant, the Court should abstain in favor of the on-going Contract Case. See Defendant's Brief at 22-24.[25]

But federal courts have a "virtually unflagging obligation" to keep jurisdiction --- and should only abstain under Colorado River in "exceptional circumstances." Golden Gate Nat. Sr. Care, LLC v. Minich ex rel. Estate of Shaffer, 629 F. App'x 348, 350 (3d Cir. 2015) (quoting Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 15, 19 (1983)).

How to tell if there are "exceptional circumstances"?

Look to whether the state case is parallel to the federal case. See Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc., 571 F.3d 299, 307 (3d Cir. 2009).

And if it is --- move through the six Colorado River factors, to see whether they clearly weigh in favor of abstention. See Rycoline Prods., Inc., 109 F.3d at 890.

Walk through all this now.

**A. Parallel?**

For Colorado River abstention to be a possibility, the state case and the federal one must concern "substantially identical claims" and "nearly identical allegations and issues." Nationwide Mut. Fire Ins. Co., 571 F.3d at 307.[26]

---

[24] The counterclaims aim at the daycare and garage denials. See Answer to Complaint, Affirmative Defenses, Counterclaims and Jury Demand ("Contract Case Answer"), Twp. of Rochelle Park v. TFJ 120 Passaic Urb., No. BER-L-6157-25 (N.J. Super. Ct. Law Div. Dec. 24, 2025), Counterclaims ¶¶ 16-26. Those counterclaims run the Defendant and also the zoning board. See id. at Page 1.

[25] The Plaintiff invokes Colorado River only as to the Contract Case. And that makes sense --- Colorado River abstention could not be based on the Daycare Case, because it is no longer ongoing. See Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc., 571 F.3d 299, 307 (3d Cir. 2009).

[26] When the litigations are mostly overlapping, that suggests that the state court case will be "an adequate vehicle for the

Not so here. The state and federal cases involve meaningfully different allegations, see Part III.A.1, legal theories, see Part III.A.2, and parties. See Part III.A.3. What this adds up to: the cases are not parallel.

### 1. Facts

The stepping off point is a comparison between the factual allegations in the two cases.

In the Contract Case, the Plaintiff here honed in on two things: the denied daycare application, and the refusal to allow certain parking in the garage. See Answer to Complaint, Affirmative Defenses, Counterclaims and Jury Demand ("Contract Case Answer"), Twp. of Rochelle Park v. TFJ 120 Passaic Urb., No. BER-L-6157-25 (N.J. Super. Ct. Law Div. Dec. 24, 2025), Counterclaims ¶¶ 1-15, 17, 25.[27]

Those allegations are part of this case, too. See Complaint ¶¶ 48-55, 61-66.

But the Plaintiff in this case alleges much more than that. As to the Defendant allegedly fining the Plaintiff. See Complaint ¶¶ 56-60. Allegedly manipulating the Plaintiff's possible housing densities. See id. ¶¶ 67-71. Allegedly sabotaging condemnation proceedings. See id. ¶¶ 72-76. Allegedly veering close to extorting the Plaintiff. See id. ¶¶ 77-85. And allegedly over-taxing the Plaintiff's other properties. See id. ¶¶ 86-90. Plus an alleged motivation for all this --- a shift in public sentiment. See id. ¶¶ 91-96.

But none of this is there in the Contract Case. So the allegations in this case are markedly broader --- the two cases are not "nearly identical." Nationwide Mut. Fire Ins. Co., 571 F.3d at 307; see also AUI Partners LLC v. State Energy Partners LLC, 742 F. Supp. 3d 28, 44-46 (D. Mass. 2024) (differences in

---

complete and prompt resolution of the issues between the parties." Moses H. Cone Mem. Hosp., 460 U.S. at 28.

[27] As noted, the Plaintiff here is the defendant in the Contract Case. The allegations alluded to in the text are from its counterclaims in the Contract Case. See Contract Case Answer, Counterclaims ¶¶ 1-15, 17, 25.

allegations weighed against the two cases being treated as parallel for Colorado River).[28]

### 2. Law

Now move to the legal side of things.

In the Contract Case, the Plaintiff claims that the Defendant broke state law, by (i) breaching the implied covenant of good faith and (ii) interfering with its prospective economic advantage. See Contract Case Answer, Counterclaims ¶¶ 16-26.

But here, the Plaintiff focuses mainly on federal law.[29] Constitutional claims. See Complaint ¶¶ 97-123, 135-40. And a federal RICO claim. See Complaint ¶¶ 124-129.

Different legal theories than in the Contract Case, with entirely different elements. See vonRosenberg v. Lawrence, 849 F.3d 163, 168 (4th Cir. 2017) ("[E]ven state and federal claims arising out of the same factual circumstances do not qualify as parallel if they differ in scope or involve different remedies.").[30]

---

[28] For more cases along roughly these lines, see SEB Invest. Mgmt. AB v. Endo Int'l, PLC, 351 F. Supp. 3d 874, 909-10 (E.D. Pa. 2018); Kantner Ingredients, Inc. v. All American Dairy Prods., Inc., 535 F. Supp. 2d 880, 885-86 (N.D. Ohio 2008); Bath Unlimited, Inc. v. Ginarte, O'Dwyer, Winograd, and Laracuente, 2005 WL 2406097, at *11 (D.N.J. Sept. 29, 2005).

[29] "Mainly" because in this case one of the Plaintiff's claims concerns an alleged state-law breach of contract. See Complaint ¶¶ 130-34. But that claim zooms in on the Defendant's alleged misappropriation of escrow funds. See id. Nothing like that comes up in the Contract Case pleadings.

[30] For other cases that take this basic tack, see Fru-Con Const. Corp. v. Controlled Air, Inc., 574 F. 3d 527, 535-37 (8th Cir. 2009); Culpepper v. van der Vaart, 840 F. Supp. 3d 664, 673 (E.D.N.C. 2026); Doe v. Mast, 741 F. Supp. 3d 409, 452-53 (W.D. Va. 2024); Smith v. Apple, Inc., 583 F. Supp. 3d 554, 563-64 (S.D.N.Y. 2022); United States ex rel. Maharaj v. Estate of Zimmerman, 427 F. Supp. 3d 625, 643-44 (D. Md. 2019); Nat'l Music Museum: £America's Shrine to Music v. Johnson, 72 F. Supp. 3d 980, 985-86 (D.S.D. 2014); DDR Const. Servs., Inc. v. Siemens Ind., Inc., 770 F. Supp. 2d 627, 645 (S.D.N.Y. 2011); Bath Unlimited, Inc., 2005 WL 2406097, at *11.

And the differences between the two cases' legal theories are not just here-and-there nibbling-at-the-edges differences.

The Contract Case invokes standard-issue private-law claims.[31] State actors (the township and its zoning board) are named as counterclaim defendants in that case. But they are sued for allegedly breaking a contract and interfering with it, see Contract Case Answer, Counterclaims ¶¶ 16-26 --- as any ordinary contracting counterparty might be.

By contrast, the case here is mainly concerned with public-law claims. State actors (the township and its officials) are again named as defendants. But this time the focus is not on what they did in connection to a contract --- but whether they lawfully exercised government power.

In short, while both cases involve people and entities related to the township --- the cases are about different sorts of conduct.[32]

---

[31] As used here, "public law" is law that regulates and empowers the government's exercise of sovereign power. And "private law" focuses on the rights and duties that non-sovereign entities (individuals, corporations, etc.) have vis-a-vis other non-sovereign entities. Public law/private law, as used in this sense, is a long-standing division in our law, though an informal one. See generally Thomas W. Merrill, Private and Public Law, in The Oxford Handbook of the New Private Law 575, 575-79 (Andrew S. Gold et al. eds., 2020) (discussing this distinction, and tracing its roots in Roman law).

[32] Another way to put it. In the Contract Case, private-law claims are pressed to challenge the actions of township-related entities acting in their "proprietary" capacity, as ordinary market-place entities might --- striking a deal with a developer and reflecting it in a contract. In this case, public-law claims are pressed to challenge the actions of township-related entities and officials acting in their "governmental" capacity --- deploying powers (approving licenses, issuing fines, etc.) that are generally reserved for those exercising sovereign authority. For the distinction as general matter between proprietary and governmental functions, see Delmar W. Doddridge, Distinction Between Governmental and Proprietary Functions of Municipal Corporations, 23 Mich. L. Rev. 325 (1925). See also 2A McQuillin Mun. Corp. § 10:5 (3d ed. 2026); 1 Local Government Law §§ 5:12, 22:5, 27:4 (2026); Hugh D. Spitzer, Realigning the

### 3. Parties

The Contract Case and this case are different, as set out above, when it comes to factual allegations and legal claims.

And they are different, too, as to parties.

The Plaintiff's counterclaims in the Contract Case are pressed against two parties: the township and the zoning board. See Contract Case Answer at Page 12.

Here, the township is also named. See Complaint ¶ 15. But so are various township officials --- a zoning officer, a code enforcement official, some councilmembers, the deputy mayor, and the mayor. See Complaint ¶¶ 16-27. Per the Plaintiff, these officials all worked together, to undermine the Plaintiff's development. Individually-taken acts, like fining the Plaintiff. See id. ¶¶ 56-60. And collective acts, like the planning and zoning boards denying the daycare application. See id. ¶¶ 61-66.

Two defendants versus 13 defendants --- more differences when it comes to party structure than overlap. That, too, weighs in favor of the conclusion that the Contract Case and this case do not line up for Colorado River purposes. See, e.g., Nat'l Collegiate Athletic Assoc. v. Corbett, 25 F. Supp. 3d 557, 571 (M.D. Pa. 2014) ("when the federal lawsuit plaintiff is a defendant in the state court proceeding, and the federal proceeding includes several defendants who are not party to the state court proceeding, the lawsuits are not parallel") (cleaned up).[33]

* * *

Bottom line: in comparison to the Contract Case, this case has broader factual allegations, see Part III.A.1, and meaningfully

---

Governmental/Proprietary Distinction in Municipal Law, 40 Seattle Univ. L. Rev. 173, 181-203 (2016).

[33] For cases that make similar points, see Culpepper, 840 F. Supp. 3d at 673-74; Doe, 741 F. Supp. 3d at 452; Yeboah v. Bank of America, N.A., 2019 WL 3388045, at *9 (D. Conn. July 26, 2019); National Music Museum, 72 F. Supp. 3d at 985-86; Bill Goodwin Const., LLC v. Wondra Const., Inc., 2013 WL 4005307, at *8 (M.D. Pa. Aug. 5, 2013); DDR Const Servs., Inc., 770 F. Supp. 2d at 645-46.

different legal claims, see Part III.A.2, pressed against a larger set of defendants. See Part III.A.3. The cases do not present "nearly identical allegations and issues." Nationwide Mut. Fire Ins. Co., 571 F.3d at 307. So they are not parallel for Colorado River purposes, and that doctrine does not apply.

### B. The Factors

Even if the Contract Case and this one were parallel --- there would still be no reason to abstain here under Colorado River.

In the context of parallel cases,[34] six factors must be weighed,[35] and the Court should abstain under Colorado River only if these factors "clearly weigh in favor of abstention." Rycoline Prods., Inc. v. C & W Unlimited, 109 F.3d 883, 890 (3d Cir. 1997).

Here, they do not. Tick through the factors to see why.

* * *

Five of these six factors are either neutral or weigh against abstention.

As to the first factor, this case is not focused on a res --- so the factor is neutral. See Rycoline Prods., Inc., 109 F.3d at 890.

Next, the federal court is not inconvenient for the parties. See id. The Defendant concedes this. See Defendant's Brief at 23. So this second factor is neutral, too.

As to the third of the Colorado River factors, there is no congressional policy against piecemeal litigation here. See Ryan v. Johnson, 115 F.3d 193, 197-98 (3d Cir. 1997). Again, neutral.

Looking to the fifth factor, the Plaintiff's claims in this case are mainly federal claims. See Complaint ¶¶ 97-129, 135-40. That weighs against abstention. See Moses H. Cone Memorial Hosp., 460 U.S. at 23-25.[36]

---

[34] The Contract Case and this case are not parallel.

[35] See Nationwide Mut. Fire Ins. Co., 571 F.3d at 308.

[36] Accord, e.g., Walker v. Louisville/Jefferson Cnty. Metro Gov't, 583 F. Supp. 3d 887, 900-01 (W.D. Ky. 2022); Tomasi v. Twp. of Long Beach, 364 F. Supp. 3d 376, 389 (D.N.J. 2019);

And the sixth and final factor --- that one is neutral, because the Plaintiff would have plainly been able to assert his federal claims in state court, in the Contract Case. See Ryan, 115 F.3d at 200.[37]

* * *

By contrast, only one factor weighs in favor of abstention. The fourth factor --- about how much progress each case has made. See Moses H. Cone Memorial Hosp., 460 U.S. at 21.

The Contract Case was filed first. And it continues to run ahead. See Order Denying Partial Summary Judgment, Township of Rochelle Park v. TFJ 120 Passaic Ur, No. BER-L-6157-25 (N.J. Super. Ct. Law Div. Aug. 24, 2026) (resolving a motion for summary judgment).

* * *

The scorecard is this: five factors are neutral or lean against Colorado River abstention, and one factor tilts in favor of it. That does not "clearly weigh in favor of abstention." Rycoline Prods., Inc., 109 F.3d at 890.

### C. The Equities

Abstention, in sum, is inappropriate here. The Contract Case and this case do not run parallel. See Part III.A. And even if they did, abstention would not be called for, because the relevant factors do not "clearly" favor abstention. See Part III.B.

* * *

Before moving on, note here a possible added strike against Colorado River abstention.

Abstention doctrines are generally rooted in equitable concerns. See Grode v. Mutual Fire, Marine and Inland Ins. Co., 8 F.3d

---

Gordon v. E. Goshen Twp., 592 F. Supp. 2d 828, 844 (E.D. Pa. 2009).

[37] See generally State v. Barcia, 228 N.J. Super. 267, 271 n.1 (Law. Div. 1988) ("[T]he Superior Court of New Jersey has jurisdiction to rule upon federal questions.").

953, 956-57 (3d Cir. 1993); Gibson v. Berryhill, 411 U.S. 564, 574 n.13 (1973).

But here, it is hard to see how abstention would be equitable.

The Defendant was sued in state court and then removed this case to federal court. And it is the Defendant who now invokes Colorado River abstention as a kind of federal-court defense --- as a means of cutting off the federal case against it.

Is this equitable? It makes little sense to think that a party that is sued in state court can choose to move the case to federal court --- and then turn around and shut things down, citing Colorado River, precisely because of the move that it initiated.

After all, if this case were still in state court --- where it would have stayed but for the Defendant's choice --- the Defendant would not be able to use Colorado River to put a stop to things.

So why is it equitable to allow the Defendant to manufacture a speed bump --- by pulling the case against it into federal court, and then arguing that the case must now be stopped because it is in federal court, where Colorado River applies?[38]

* * *

[38] In addition to the equities, waiver might have work to do in this area, too. States, for example, waive the sovereign immunity they ordinarily would get in federal court when they are the ones that opt to remove a state court case to federal court. See Lapides v. Bd. Of Regents of Univ. Sys. of Ga., 535 U.S. 613 (2002). So too, it might be argued that a state court defendant who removes to federal court waives his ability to press a Colorado River challenge. Perhaps, it might be argued, the price of leaving for federal court is that a defendant cannot then try to short-circuit the case against it on the grounds that the case is in federal court. Moving to federal court was its own decision, the argument would go --- the sort of voluntary and intentional choice that can trigger waiver. But see Kantner Ingredients, Inc. v. All American Dairy Products, Inc., 535 F. Supp. 2d 880, 883-85 (N.D. Ohio 2008) (rejecting the waiver theory).

In short, Colorado River abstention does not block this case.[39]

---

[39] A note. The common-law rule has long been that a later-filed case should generally be paused in favor of the first-filed case. See, e.g., Smith v. McIver, 22 U.S. (9 Wheat.) 532, 535 (1824); see generally Muhammad v. State Farm Indemnity Co., 719 F. Supp. 3d 397, 400-02 (D.N.J. 2024). And the Contract Case was filed before this one. Should this case be paused in light of the first-filed rule? (The rule can be raised sua sponte. See Galvez v. Midland Credit Mgmt., Inc., --- F. Supp. 3d ---, 2026 WL 2240595, at 13 n.28 (D.N.J. 2026).) Historically, there was no categorical bar to applying the first-filed rule where, as here, the first case was a state case and the later one was a federal case. See, e.g., Peck v. Jenness, 48 U.S. 612, 624-25 (1849).

Maybe, though, the early state/federal application of the first-filed rule was pushed aside by later developments --- like the 1875 passage of the federal-question statute. After all, jurisdictional statutes generate a "virtually unflagging" obligation to exercise jurisdiction. Colorado River Water Conservation Dist., 424 U.S. at 817. But "Congress is not generally presumed to displace deeply-entrenched parts of our common law" without saying that is what it is doing. Spencer Sav. Bank, S.L.A. v. Bnk Inv., Inc., 2026 WL 867970, at *5 (D.N.J. Mar. 30, 2026). And nothing in the federal question statute suggests an intent to displace the first-filed rule. Indeed, the Superme Court seems to have assumed that the state/federal first-filed rule has continued viability. See Harkrader v. Wadley, 172 U.S. 148, 164 (1898); cf. Brillhart v. Excess Ins. Co. of Am., 316 U.S. 491, 494-95 (1942).

This said, it is sometimes argued that the first-filed rule has been implicitly pushed aside by the various modern abstention doctrines. See Matthews v. Lemonade Ins. Co., 809 F. Supp. 3d 1076, 1087-88 (S.D. Cal. 2025); Spellman v. Express Dynamics, LLC, 150 F. Supp. 3d 378, 387-88 (D.N.J. 2015); James C. Rehnquist, Taking Comity Seriously: How to Neutralize the Abstention Doctrine, 46 Stan. L. Rev. 1049, 1113-14 (1994); cf. Cottrell v. Duke, 737 F.3d 1238, 1248-50 (8th Cir. 2013). But the first-filed rule and the modern abstention doctrines are not simply mirror-image duplicates of one another. And while the modern abstention doctrines are narrow exceptions to a court's duty to take and keep jurisdiction, that does not mean they must be the only exceptions, such that there is no room for the first-filed rule.

## IV. Entire Controversy

The Defendant's final argument for now: that the Plaintiff's claims are precluded under New Jersey's entire controversy doctrine. See Defendant's Brief at 24-27.[40]

Under that doctrine, failing to bring claims in an earlier case (like the Daycare Case[41]) sometimes precludes a plaintiff from asserting them in a later case (like this case). See Galvez v. Midland Credit Mgmt., Inc., --- F. Supp. 3d ---, 2026 WL 2240595, at *3 (D.N.J. 2026).

The Court's conclusion: it is difficult to tell whether the Plaintiff's claims are precluded here, because more information is needed. The parties will be given a chance to provide it.

* * *

To determine whether cases are part of the same controversy for entire controversy purposes, New Jersey looks to whether the claims in them "arise from related facts or the same transaction or series of transactions," even if they proceed under different legal theories. Bank Leumi USA v. Kloss, 243 N.J. 218, 226 (2020) (cleaned up).

Do the Plaintiff's claims here "arise from related facts or the same transaction or series of transactions" as the claims from the Daycare Case?

To answer, the basic approach is to lay the cases' allegations side-by-side.

Recall the core of the Daycare Case: the Defendant wrongly denied the Plaintiff's application as to where a daycare might be located.

---

Pause here, though, and put all of this on hold. The first-filed rule raises complexities, and given those the Court will not pursue it sua sponte.

[40] New Jersey law, including the entire controversy doctrine, decides the preclusive effect of a judgment that, as here, comes from a New Jersey state court. See Rycoline Prods., Inc., 109 F.3d at 887.

[41] The Defendant does not argue that this action is precluded on account of the Contract Case. So the Court does not consider that question.

Now move to this case, which also includes allegations as to the daycare-application denial. See Complaint ¶¶ 61-66. But it includes more than that, too. Additional allegations concerning the same redevelopment property.[42] And allegations concerning other properties that the Plaintiff owns, too.[43]

Did all of this need to be brought together, such that the entire controversy doctrine now precludes the Plaintiff from raising these issues here because they were not brought up in the Daycare Case? Or was it fine for the Daycare Case to consider just the denial of the daycare application --- with the broader course of conduct (presumably encompassing some allegations related to the daycare application) taken up here I federal court?

The caselaw on this issue is a bit split.[44]

But one thing is clear: what is required is a close-to-ground and fact-intensive analysis. For that, the Court simply has too little to go on for now. About the Daycare Case, yes. And also about this case.[45] More information will be needed.

---

[42] The Defendant allegedly denying a certificate of occupancy for commercial vehicle storage, see Complaint ¶¶ 48-55, fining the Plaintiff for storing vehicles, see id. ¶¶ 56-60, manipulating housing parameters, see id. ¶ 69, sabotaging the required condemnation proceedings, see id. ¶¶ 72-76, and extorting the Plaintiff. See id. ¶¶ 77-85.

[43] The Defendant allegedly over-taxing the Plaintiff's other properties and altering housing expectations for one of them, too. See Complaint ¶¶ 68, 86-90.

[44] On some sets of facts, courts have held that multiple potentially related incidents count as different controversies for entire controversy doctrine purposes. See, e.g., Oltremare v. ESR Custom Rugs, Inc., 330 N.J. Super. 310, 314-16 (App. Div. 2000); Vision Mortg. Corp., Inc. v. Patricia J. Chiapperini, Inc., 156 N.J. 580, 582-85 (1999). But on other facts, courts have come out the other way. See, e.g., Studio 45 Discotheque, Inc. v. City of Union City, 292 F. App'x 197, 198-200 (3d Cir. 2008); Giuduce v. Drew Chem. Corp., 210 N.J. Super. 32, 41-42 (App. Div. 1986).

[45] Take, for example, the Defendant's allegedly illegal over-taxing of the Plaintiff's other properties. See Complaint ¶¶ 86-90. Is that "[]related," see DiTrolio v. Antiles, 142

* * *

And note a second point.

Even where two cases have a tight-enough connection, whether to apply the entire controversy doctrine is an "equitable" matter. Bank Leumi USA, 243 N.J. at 227 (cleaned up).[46]

Against that backdrop, note that the Defendant's argument is essentially this: the (broader) factual and legal contentions pressed here should have been raised in the Daycare Case --- a challenge, essentially under New Jersey administrative law, to the actions of a local agency, the zoning board. See Daycare Case Complaint ¶¶ 5, 35-46.

Would the entire controversy doctrine be "unfair [to apply here,] in the totality of the circumstances?" Bank Leumi USA, 243 N.J. at 227.

Note that the Daycare Case was an "action in lieu of prerogative writs." See Daycare Case Complaint at 1.

Under New Jersey law, that is one way to challenge a local land-use decision. But not the only way. For example, it is sometimes possible to also bring a challenge via a Section 1983 claim, as the Plaintiff does in this federal case. See Thomas Jay Hall & John C. Phillips, New Jersey Land Use § 10.05[2] (2d ed. 2007); Complaint ¶¶ 97-123.

Challengers are often cautioned that if they do not press their Section 1983 claims in their prerogative writ case --- they may be boxed out from the possibility of a later Section 1983 claim, based on operation of the entire controversy doctrine. See 19

---

N.J. 253, 271 (1995), in some way to the daycare? Not clear. Or consider the allegedly illegal fines. See Complaint ¶¶ 56-60. How, if at all, do they concern the daycare? Again, not clear. Same for the changed housing density. See id. ¶¶ 67-71. And the construction contract threat. See id. ¶¶ 77-80.

[46] "[A]pplication [of the doctrine] is left to judicial discretion based on the factual circumstances of individual cases." Id. (cleaned up). Courts should not preclude claims under the entire controversy doctrine if it "would be unfair in the totality of the circumstances and would not promote the doctrine's objectives of conclusive determinations, party fairness, and judicial economy and efficiency." Id. at 227-28 (cleaned up).

N.J. Prac., Skills and Methods § 4:13 (3d ed. 2026) (because of "the entire controversy doctrine, the prudent practitioner will include all parties and all claims for relief available to him or her at the time of the filing of the [action in lieu of prerogative writs], to avoid being precluded from subsequent action with regard to those parties or those claims"); cf. Cox & Koenig, New Jersey Zoning and Land Use Administration § 40-4.4 (2026).

Assume for now this is sound advice, rooted in a correct understanding of how the entire controversy might work on a later-pressed Section 1983 claim.

On that assumption, is it generally understood that challengers are expected to bring any broader Section 1983 claims in their prerogative writ cases, claims (as here) that situate the challenged land-use decision in a much wider course of conduct?

Maybe yes --- bringing broader claims in such cases will perhaps be at least an available option. See, e.g., 19 N.J. Prac., Skills and Methods § 4:13.

Or maybe no --- prerogative writ cases are generally built for narrow, quick adjudication, focused on the discrete decision made by the relevant governmental entity or agency. Such cases operate under tight time limits --- they need to be filed within 45 days of the zoning board's decision being put online. See N.J. Ct. R 4:69-6(b)(3). They go forward based on a limited record, typically with little-to-no discovery. See Hall & Phillips, New Jersey Land Use § 10.06[5]. And there is a generally deferential standard of review. See id. § 10.02.[47]

---

[47] See John H. Klock, 2 N.J. Prac., Court Rules Annotated R 4:69-1 (2025 ed.) ("When [a] decision in municipal government is challenged in [an] action in lieu of prerogative writs, . . . [it is] a predominantly appellate form of action and, as a result, the trial judge should generally limit his inquiry to examination of the full and complete record below."); James H. Walzer, 4A N.J. Prac., Civil Practice Forms § 82:1 (6th ed. 2026) ("Action[s] in Lieu of Prerogative Writs are appeals from a decision of or failure to act on the part of a local governmental body, such as a Zoning Board of Adjustment or Planning Board; limited to an appeal on the record below.").

As this Court thinks through its equitable discretion as to whether to apply the entire controversy doctrine here, it will be useful to get a fuller sense as to background expectations.

Are challengers generally expected to bring broader Section 1983 claims[48] in their prerogative writ cases? Or would that be out of step with how things generally work?

Precluding a claim at Time 2 because of an earlier Time 1 case may make less sense if, as a practical matter, it is widely understood that the relevant claim is not the sort that is expected to be raised in the Time 1 proceeding. And vice versa.

There are any number of ways to flesh out the record on this point, and the parties will be given a chance to do so.

* * *

An order will issue today, as to the two issues for which further information is necessary before resolving the entire controversy issue.[49]

---

[48] Claims like the ones pressed here in this Court --- that treat the challenged decision (here, the daycare denial) as one part of a much wider course of conduct.

[49] When preclusion is not apparent on the face of the complaint, courts can, and often do, defer the issue to summary judgment. See Rycoline Prods, Inc., 109 F.3d at 886-87; see also Nealon v. Int'l. Bhd. of Teamsters, Local 700, 2025 WL 582212, at *3 (N.D. Ill. Feb. 24, 2025); Ojo v. Milrose 179 Harrison, LLC, 2021 WL 822788, at *8 (D.N.J. Mar. 4, 2021); D'Agostino v. Appliances Buy Phone, Inc., 633 F. App'x 88, 93-94 (3d Cir. 2015); cf. 18 Moore's Federal Practice - Civil § 131.50 (2026); 18 Fed. Prac. & Proc. Juris. § 4405 (3d ed. 2026). But because preclusion is a threshold issue and a relatively narrower one than the overall merits, it makes sense to resolve it earlier than that, on its own track. An added note. Putting aside the entire controversy doctrine, the Defendant also argues that the Plaintiff's claims are precluded by res judicata. See Defendant's Brief at 24-27. The preclusive effect of res judicata seems to be either the same as, or narrower than, that of the entire controversy doctrine. See Galvez, --- F. Supp. 3d ---, 2026 WL 2240595, at *6 n.16. So in many cases, if the Plaintiff's claims are not precluded under the potentially broader entire controversy doctrine, they would also not be precluded under the potentially narrower res judicata.

## V. Conclusion

As to the parts taken up here, the Defendant's motion to dismiss is denied.

* * *

IT IS on this 5th day of November, 2026, **SO ORDERED.**

Michael E. Farbiarz, U.S.D.J.